UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRYAN ANTHONY BRANHAM                                                                                        Plaintiff

v.                                                                    Civil Action No. 3:17-CV-P117-RGJ

SCOTT JORDAN, *et al.*                                                                      Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for summary judgment by Defendants Scott Jordan, Jesse Stack, and Tim Forgy (DN 36). Plaintiff filed a response. Defendants did not file a reply. For the following reasons, the Court will deny Defendants' motion for summary judgment.

### I. PROCEDURAL HISTORY

Plaintiff initiated this *pro se* 42 U.S.C. § 1983 prisoner civil-rights action in February 2017. On initial review of the complaint and amended complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed certain claims but allowed the following three claims to proceed – 1) individual-capacity claims against Defendants Luther Luckett Correctional Complex (LLCC) Warden Scott Jordan and Deputy Warden of Programs Jesse Stack for violating Plaintiff's rights under the Establishment Clause by forcing him to participate in Narcotics Anonymous/Alcoholics Anonymous (NA/AA); 2) individual-capacity claims against Defendants Jordan and Stack for violating Plaintiff's "privacy rights" by allowing NA/AA bulletins, memos, and/or schedules with Plaintiff's name on them to be posted around LLCC; and 3) a First Amendment individual-capacity claim against Defendant LLCC Captain Forgy for having Plaintiff transferred to another prison, Little Sandy Correctional Complex (LSCC), in retaliation for filing grievances.

## II. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

## III. ESTABLISHMENT CLAUSE CLAIM

### A. UNDISPUTED FACTS

With regard to this claim, the undisputed facts are as follows. On December 14, 2015, a "Classification and Treatment Officer" (CTO) recommended that Plaintiff participate in the following programs – "SAP, OJT, Voc/College, NA/AA, MRT and Anger Management."[1] (DN 36-2, "Program Recommendations"). Plaintiff was assigned to NA on April 28, 2016. (DN 36-7, "Job/Program Assignment"). On May 16, 2016, Plaintiff filed a grievance related to his assignment to NA/AA in which he wrote:

> I am grieving the fact that I am being forced to take NA-AA. If I do not I would be removed from Meritorious housing and not be awarded good time allowance. Furthermore I did not request this program and do not feel it is right to be forced to do so, nor penalized for not doing so. The steps as well as the serenity prayer no matter what is said to justify clearly proved this is a religious & spiritual program . . . .

(DN 1-1, p. 2, Inmate Grievance Form).

Plaintiff received a response to his grievance from a "UAI/Club Coordinator." (DN 1-1, p. 3, Response to Grievance). The response states: "At this time it has been and is the direction of the of the Warden that MGT awards in part be reliant upon participation in recommended programming." *Id*. The response then referenced an attached NA pamphlet which purportedly showed that NA "is a non-religious program of recovery." *Id*.

On May 25, 2016, the Grievance Committee responded to Plaintiff's grievance. This response states: "The Committee finds that there is no penalty for not participating in a recommended program, there are consequences. Consequences can be either positive or negative.

---

[1] In their motion for summary judgment, Defendants clarify the meaning of these acronyms. They state that "SAP" stands for "substance abuse program"; "OJT" stands for "on-the job training"; "Voc/College" means vocational or college classes; "NA/AA" means Narcotics Anonymous/Alcoholics Anonymous; and "MRT" stands for "Moral Reconation Therapy." (DN 36-1, Defs.' Mem., p.1).

3

Current policies for merit housing and [Meritorious Good Time] MGT are clear and are enforced consistently." (DN 1-1, p. 6, Inmate Grievance Form)

Plaintiff appealed the Grievance Committee's response. In his appeal, Plaintiff reiterated that if he does not participate in NA/AA, he will be penalized for doing so by not receiving "MGT" or "meritorious housing." (DN 1-1, p. 8, Grievance Appeal Form). Plaintiff then makes more detailed allegations about how NA is a religious program. *Id*.

On June 16, 2016, Plaintiff received a response to his appeal from Defendant Warden Jordan (DN 1-1, p. 9, Warden's Resp.). It provides, in toto, as follows:

> I have reviewed the Brief Statement of the Problem, Action Requested, Informal Resolution, Grievance Committee Recommendation and Appeal. I concur with the Informal Resolution and the Grievance Committee Recommendations. In order to be eligible for meritorious housing you must have a job and be involved in progamming. The awarding of MGT is discretionary and based on your participation. Your statement that you are being forced to participate in a religious program or you will be denied merit housing and MGT is not correct. As stated in the informal resolution AA/NA is not a religious program and the prayer is voluntary. In addition, at no time are inmates forced to participate in programming or employment. Both are optional but in order to receive privileges such as merit housing you must be involved in both. According to your record you were recommended for SAP, OJT, and AA/NA upon arrival to LLCC. Please see your CTO to sign up for any programs that you are recommended for. No further action is required.

*Id.*

Plaintiff then appealed the Warden's decision to the Commissioner of the Kentucky Department of Corrections. The Commissioner's response states:

> I have reviewed your grievance. As stated at all levels of the grievance, the awarding of MGT is at the discretion of the Warden. In addition, the requirements to remain in meritorious housing are that inmates participate in recommended programs. However, information received at this office indicates the Warden is reviewing this matter again. You will receive MGT if the Warden believes it is warranted. No further response is necessary.

(DN 1-1, p. 11, Commissioner's Review).

## B. ANALYSIS

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise . . . ." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Thus, courts have held that because of the religious focus of NA/AA programs, forcing prisoners and parolees to attend them as a condition of their confinement or parole violates their rights under the Establishment Clause. *See, e.g.*, *United States v. Logins*, 503 F. App'x 345, 352 n.4 (6th Cir. 2012); *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007).

And, indeed, this Court has considered this very issue. In *Oakley v. Mugavin*, the plaintiff prisoner argued that he was required to attend AA meetings in order to be eligible to receive MGT. 3:99CV-P310-S, 2000 U.S. Dist. LEXIS 21675, at *3 (W.D. Ky. Nov. 7, 2000). He alleged that because the AA meetings had a religious dimension, he was being coerced into participating in a religious program in violation of the Establishment Clause. *Id*. The Court found that there was a genuine issue of material fact as to whether the plaintiff was required to attend AA meetings in order to receive MGT and thus declined to grant summary judgment to the defendants on the plaintiff's Establishment Clause claim. *Id*. at *8-13.

In the motion now before the Court, Defendants argue that Plaintiff was not required to continue the NA/AA program under threat of any adverse consequences. They argue that he received "the maximum meritorious good time statutorily and suffered no other adverse consequences." (DN 36-1, Defs.' Mem., p. 2). Defendants, however, attach no affidavits, institutional policies or procedures, or any other evidence which would support their contention that Plaintiff received no adverse consequences for declining to participate in NA/AA due to its religious overtones. Defendants do submit evidence showing that he applied to other programs while incarcerated at LLCC; the Court, however, is unsure what this evidence is supposed to

establish in regard to Plaintiff's specific claim. Defendants also cite to Defendant Jordan's response to Plaintiff's appeal of the denial of his grievance. As set forth above, Defendant Jordan responded to Plaintiff's grievance as follows:

> . . . In order to be eligible for meritorious housing you must have a job and be involved in progamming. The awarding of MGT is discretionary and based on your participation. Your statement that you are being forced to participate in a religious program or you will be denied merit housing and MGT is not correct. As stated in the informal resolution AA/NA is not a religious program and the prayer is voluntary. In addition, at no time are inmates forced to participate in programming or employment. Both are optional but in order to receive privileges such as merit housing you must be involved in both. According to your record you were recommended for SAP, OJT, and AA/NA upon arrival to LLCC. Please see your CTO to sign up for any programs that you are recommended for. No further action is required.

(DN 36-8, Warden's Resp.). Defendants argue that this response shows that Defendant Jordan informed Plaintiff that he was "free to work with his CTO find other programming." (DN 36-1, Defs.' Mem., p. 2).

The Court finds that Defendant Jordan's response does not clearly support any of Defendants' arguments. Indeed, the Court finds that the response is murky and ambiguous as to the issues raised by Plaintiff, especially when considered with the other "responses" that Plaintiff received in response to his grievance. Thus, the Court concludes that the evidence presented in this case creates a genuine issue of material fact as to whether Plaintiff was forced to choose between participating in NA/AA and potentially losing meritorious good time or merit housing. The Court therefore declines to grant summary judgment on Plaintiff's Establishment Clause claim. *See also Kerr v. Farrey*, 95 F.3d 472 (7th Cir. 1996) (finding violation of the Establishment Clause when a state prison required an inmate, "upon pain of being rated a higher security risk and suffering adverse effects for parole eligibility, to attend a substance abuse counselling program with explicit religious content").

# IV. RETALIATION CLAIM

## A. UNDISPUTED FACTS

On July 22, 2016, Plaintiff filed a grievance regarding a memo written by Defendant Forgy concerning new rules regarding "visitation procedures" at LLCC. (DN 40-1, p. 12, Inmate Grievance Form). According to the grievance, the memo stated that if an inmate had to use the restroom during a visit, he would forfeit the rest of that visit. *Id.* In his grievance, Plaintiff claimed that these new rules violated the constitutional rights of both inmates and their visitors because individuals cannot control when they have to use the restroom. *Id.*

On July 29, 2016, Defendant Forgy responded to Plaintiff's grievance by drafting a memorandum to the grievance coordinator in which he clarified the new visitation rules. (DN 40-1, p. 13, Memo). Therein, Defendant Forgy stated that visitors and inmates would be given the opportunity to use the restroom prior to the start of two-hour visits. *Id.* He also clarified that there were exceptions to the new rule for children, the elderly, and prisoners who had been "granted an extended visit." *Id.* At the end of the memo, Defendant Forgy stated, ""If the two hour time limit continues to be an issue, then the current visiting times should be adjusted to one (1) hour to better accommodate the inmates and visitors and avoid any further issues of confusion." *Id.*

On August 1, 2016, Plaintiff filed a grievance based upon Defendant Forgy's response to his prior grievance. (DN 40-1, p. 16, Grievance Information Form). In this grievance, Plaintiff claimed that Defendant Forgy's response included a hidden threat of retaliation when he stated that two-hour visits could be reduced to one hour. Plaintiff concluded this grievance by stating, "No more retaliation of threats, hidden innuendos or unprofessional conduct to be used by correctional staff allowing our constitutional right not be violated." *Id.*

On the same date Plaintiff filed this grievance, Plaintiff's CTO filed a Transfer Authorization Form for Plaintiff which was approved by a non-defendant supervisor and Defendant Deputy Warden Stack. (DN 40-1, pp. 19-20, Transfer Authorization Form). The form states that the reasons for the transfer request were that the placement would afford access to "Classification Recommendation" and would "facilitate bed space within the institution." *Id*. Plaintiff was transferred to LSCC on August 16, 2016. (DN 40-1, p. 23).

In his verified complaint,[2] Plaintiff states,

> I was honor status and in the meritorious good behavior housing unit. I was employed as an institutional Full time barber. I fulfilled all requirements set by classification, I was clear conduct and on the waiting list for vocational, other Evidence based programming along with being in Two programs, Inside Out Dads and violent offender program. All of the above [] would have prevented transfer and when the transfer director would evaluate inmates for transfer I would not have been eligible or looked at unless it was for specific reasoning.

(DN 1, Compl., p. 16).

## B. ANALYSIS

As indicated above, on initial review, the Court allowed a retaliation claim to proceed against Defendant Forgy based on Plaintiff's transfer to another institution following Plaintiff's filing of grievances.

To establish a claim of retaliation based on the exercise of First Amendment rights, a plaintiff must show (1) that he "engaged in protected conduct," (2) that "an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) that "there is a causal connection between" the first two elements – "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, the plaintiff must be able to

---

[2] Plaintiff's complaint was signed under penalty of perjury. A "verified complaint . . . carries the same weight as would an affidavit for purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399.

In their motion for summary judgment, Defendants do not argue that Plaintiff has failed to establish any of the three elements of a retaliation claim. Rather, they argue that Defendant Forgy is entitled to summary judgment because Defendant Forgy did not have the authority to transfer Plaintiff and because the record shows that he was not involved in Plaintiff's transfer. Defendants do not cite to any evidence in support of these arguments. In his response, Plaintiff argues that the record shows that there was "collusion between Administrative staff to have him transferred." He states that this is evidenced not only by the timing of his transfer but also by the fact that his transfer was in violation of policy because he was currently completing "accredited programming" (the "Inside Out Dads" program) and his "OJT" requirement as an inmate barber. As indicated above, Defendants did not file a reply.

Upon consideration, the Court concludes that Defendants are not entitled to summary judgment on this claim. The Transfer Authorization Form does show that Defendant Forgy did not formally initiate or approve Plaintiff's transfer. (DN 40-1, pp. 19-20). However, the Court agrees with Plaintiff that a reasonable jury could conclude based upon the circumstantial evidence, especially the timing of the transfer, that Defendant Forgy may have been involved. Again, the Court notes that Defendants have submitted no affidavits, institutional rules or procedures, or other evidence to support their claim that Defendant Forgy was not or could not have been involved in Plaintiff's transfer.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 36) is **DENIED**.[3]

Date: March 13, 2020

Rebecca Grady Jennings, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
A961.011

---

[3] The Court again notes that it allowed a privacy claim to proceed against Defendants Warden Jordan and Deputy Warden Stack for permitting NA/AA bulletins, memos, and/or schedules with Plaintiff's name on them to be posted around LLCC. Defendants did not address this claim in their motion for summary judgment. Thus, the claim remains unaddressed.